CARPENTER v. LUDLUM et al.

No. 5224.

Circuit Court of Appeals, Third Circuit.

Feb. 23, 1934.

Albert L. Moise, of Philadelphia, Pa., and Fowler & Fowler, of Knoxville, Tenn., for appellant.

Percival H. Granger, John Arthur Brown, William A. Carr, and Reber, Granger & Montgomery, all of Philadelphia, Pa., for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The Cadet Hosiery Company, a Delaware corporation, was put into receivership by the District Court of the United States for the Eastern District of Pennsylvania. Besides property in Pennsylvania it had assets in Tennessee. Under the law of Tennessee, resident creditors of an insolvent foreign corporation have priority over non-resident simple contract corporation creditors (not registered in Tennessee) in the distribution of its assets located in that state. Section 2552 of Shannon's Code of the State of Tennessee, now section 4134 of the Code of Tennessee, Vol. 2, p. 496.

Holston-Union National Bank of Knoxville, Tennessee, regarded as a resident of Tennessee, is a general creditor of the respondent hosiery company in a considerable sum. Its receiver offered its claim for proof before a master appointed by the District Court in Pennsylvania and the master allowed the claim with the qualification which we shall state presently. In the meantime, the District Court of the United States for the Middle District of Tennessee appointed ancillary receivers for the respondent corporation. The cited Tennessee Act was invoked for the benefit of its creditors resident in that state. The court of ancillary jurisdiction thereupon referred all claims to a master with direction to ascertain the number of Tennessee creditors and the amounts due them. The claim of the receiver of the Holston-Union National Bank was, with others, allowed and accorded priority in distribution of proceeds of Tennessee assets over claims of foreign corporation creditors not registered in that state. Thus the bank has, through its receiver, proved its claim in both courts and is contending that by reason of the priority afforded by the Tennessee statute it is entitled as a general creditor, resident in Tennessee, to be paid its pro rata share of the proceeds of the respondent's Tennessee assets when distributed by the court of ancillary jurisdiction and also to be paid an equal dividend with creditors outside of the State of Tennessee from proceeds of its assets located elsewhere when distributed by the court of primary jurisdiction. Anticipating the effort of the bank's receiver to obtain

double dividends, the master for the court of primary jurisdiction in Pennsylvania qualified his allowance of the bank's claim by "reserving judgment" as to the alleged priority of the claim in respect to Tennessee assets until such time as the fund realized from the sale of those assets "comes before him for distribution."

On exceptions, the primary court in Pennsylvania, knowing that the effect of the Tennessee priority is to withdraw for the benefit of a group of creditors part of the assets to which all creditors look for payment, affirmed its master's report after modifying it so that distribution by the primary court among general creditors whose claims were allowed by its master (which includes the claim of the bank's receiver) "shall be such that there will be no inequality in the ultimate distribution of all of the defendant's assets, wherever situated, among all the creditors whose claims may be allowed." That was a recognition by the court of primary jurisdiction of what had happened in Tennessee with respect to the claimant's priority, and a determination on the facts of the case that what the claimant may receive in Tennessee shall be reckoned in or deducted from the amount which otherwise he would receive in distribution of assets outside of Tennessee by the court of primary jurisdiction, the practical effect of which is to ensure, as nearly as may be, equality in the distribution of assets, wherever located, among the respondent's creditors of the same class wherever resident. The receiver of the bank appealed from an order of the court of primary jurisdiction refusing to vacate its order of equality, raising the question:

In a federal equity receivership pending in primary and ancillary jurisdictions, does the priority in distribution afforded by the Tennessee statute enable Tennessee creditors to receive a dividend out of Tennessee assets to the exclusion of foreign corporation creditors not registered in Tennessee and then participate equally with other creditors in the distribution of Pennsylvania assets, thus ultimately giving Tennessee creditors a larger dividend than that received by other general creditors?

The statute in question has been before the courts. "In Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 43 L. Ed. 432, it was held that, while * * * the act was unconstitutional in so far as it gave the claims of Tennessee creditors of a foreign corporation priority over those of natural persons who were citizens of other states, it was a consti-

tutional exercise of the power of the state to prescribe the conditions upon which a foreign corporation might enter its territory for purposes of business, in so far as it gave the claims of Tennessee creditors priority over those of other foreign corporations not doing business in Tennessee under the act * * *." In re Standard Oak Veneer Company (D. C.) 173 F. 103, 105.

It should be noted that the Tennessee Act, as interpreted, is not leveled against creditors of an insolvent foreign corporation who are natural persons, citizens of other states, proving claims against Tennessee assets, but is directed, on award of priority to Tennessee creditors, against claims of foreign corporation creditors not doing business in Tennessee under the Act. We assume, therefore, that what the learned trial judge has said, and we state that what we shall say and decide, concerns not personal creditors of a corporation in receivership, or any of several situations which we conceive might arise, but concerns only this case of a creditor, resident in Tennessee, seeking priority in respect to Tennessee assets over the claims of foreign corporation creditors not doing business in Tennessee under the Act and also seeking equality in Pennsylvania with the claims of corporate and personal creditors in respect to assets located elsewhere.

The theory and scope of the Tennessee Act have not, so far as we can learn, been fully declared by the courts of that state. They have, however, been considered to some extent and discussed by the Supreme Court in Blake v. McClung, supra. Reading the words of the statute in the light of that decision, it is clear that the statute does not give residents of Tennessee a lien upon the assets of an insolvent foreign corporation which are located there. This apparently is recognized by the appellant-claimant, for in order to bring himself within the Tennessee statute and to share thereunder the proceeds of the assets of the respondent foreign corporation in that state, to be distributed (we assume) by the court of ancillary jurisdiction, and also to bring himself, under general law, within the distribution of the proceeds of its assets in other states, to be made by the court of primary jurisdiction, the appellant-claimant predicates his whole case upon an assertion, as matter of law, that he, "The appellant (claimant) is in the same position as a secured creditor holding collateral," and that, in consequence, "His claim as a general creditor, until paid in full, is not reduced by the priority given to him by the Tennessee

statute out of assets in Tennessee." Of course, were we to concede the appellant's premise in this legal syllogism that he is, in legal effect, a "secured creditor holding collateral," we should be forced to his conclusion. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611; Chemical National Bank v. Armstrong (C. C. A.) 59 F. 372, 28 L. R. A. 231, 16 U. S. App. 465.

But we find nothing in the statute which sustains the premise. The statute, as we have said, does not give creditors resident in Tennessee a lien upon the assets of an insolvent foreign corporation in that state, nor does it afford them a security, collateral or otherwise. As its language denotes, it merely gives them priority in the distribution of the assets in Tennessee over all unregistered general corporation creditors resident or domiciled elsewhere. In a word, the statute gives not a lien nor a security but a priority. In doing this the purpose of the legislature is quite clear, namely; to prescribe conditions upon which a foreign corporation may do business in Tennessee and, in case of its insolvency, to protect local creditors against discrimination in other jurisdictions; and in providing that local courts shall so enforce the statute, it was entirely within its rights. 1 Clark on Receivers, § 321.

■ The rule which allows a state by statute or permits an ancillary court by decree to protect creditors within its jurisdiction against discrimination in the forum of the original receivership recognizes equally the right of a primary court to protect creditors within its jurisdiction against discrimination by statute or decree in the jurisdiction of the ancillary court. The principle is the same in either case, and looks to the same end, that of ultimate equality, as nearly as possible, of distribution of the debtor's assets among its general creditors wherever resident. 1 Clark on Receivers, § 321; 24 Corpus Juris, 1125; Sands v. E. S. Greeley & Co. (C. C. A.) 88 F. 130; Brooks v. Smith (C. C. A.) 290 F. 33, 38; People v. Granite State Provident Association, 161 N. Y. 492, 55 N. E. 1053; Frowert v. Blank, 205 Pa. 299, 54 A. 1000; Mitchell v. Liberty Clay Products Co., Receiver, 291 Pa. 282, 139 A. 853; Smith v. Electric Machinery Co., 83 Pa. Super. Ct. 143; Bank Commissioners v. Granite State Provident Association, 70 N. H. 557, 49 A. 124, 85 Am. St. Rep. 646.

This principle was recognized by the Supreme Court in Blake v. McClung, supra, in passing on the constitutionality of the Tennessee Act in question when it suggested a hypothetical case which is particularly apposite to this case. Venturing to substitute names to fit the facts of this case, the court said:

"Nor must we be understood as saying that a state may not, by its courts, retain within its limits the assets of a foreign corporation, in order that justice may be done to its own citizens, nor, by appropriate action of its judicial tribunals, see to it that its own citizens *are not unjustly discriminated against* by reason of the administration in other states of the assets there of an insolvent corporation doing business within its limits. For instance, if the (Cadet Hosiery Company) had property in (Pennsylvania) at the time of its insolvency, the Tennessee court administering its assets in that state could take into account what a (Pennsylvania) creditor, seeking to participate in the distribution of the company's assets in Tennessee, had received or would receive from the company's assets in (Pennsylvania), and make such order touching the assets of the company in Tennessee *as would protect* Tennessee creditors against wrongful discrimination arising from the particular action taken in (Pennsylvania) for the benefit of creditors residing in that commonwealth." (Italics supplied.)

■ Such being our understanding of the law as applied in one court or the other, the appellant cannot say, successfully, that the court of primary jurisdiction has not in this case given full faith and credit to the decree of the ancillary court in Tennessee within section 1, article 4 of the Constitution. By doing nothing to disturb the decree of the ancillary court with respect to Tennessee funds in its hands, the primary court did give full faith and credit to the decision of the ancillary court in Tennessee which awarded priority to the claim of the appellant, a Tennessee creditor, over claims of foreign corporation creditors of the respondent as to Tennessee assets, but said, in effect, while the State of Tennessee may by statute (enforced by a court of ancillary jurisdiction) lawfully protect its own residents from outside discrimination, so also may a court of primary jurisdiction under general law protect creditors resident in Pennsylvania and elsewhere against discrimination by the law of Tennessee and by courts enforcing that law, and that in the exercise of like rights of both courts, which may or may not be conflicting in a practical sense ac-

cording as local assets and local claims in Tennessee are large or small by comparison with assets and claims outside of Tennessee, the court of primary jurisdiction may direct, as nearly as may be, equality of distribution of funds in its hands within the principle that equality is equity. In other words, how Tennessee shall protect its own resident creditors with respect to local assets of an insolvent foreign corporation is a matter for Tennessee alone. Just here, however, its power stops. Although the Tennessee statute can arrest general law with respect to claims of unregistered foreign corporation creditors at its borders, it cannot hinder or annul general law beyond its borders. This legislative power of the state is not extra-territorial.

With this understanding of the purpose and effect of the Tennessee statute in question and, of course, with a deferential recognition of the priority which the ancillary court in that state has given the appellant within the limits of the statute, we are constrained to affirm the order of the District Court for the Eastern District of Pennsylvania.